IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DANIEL SIEBERT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:01-cv-2323-IPJ-TMP |
| ) | |
| DONAL CAMPBELL, Commissioner of the ) | |
| Alabama Department of Corrections, and the ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF ALABAMA, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION**

This is an action by an Alabama state prisoner pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the conviction he received in the Talledega County Circuit Court on March 19, 1987, for capital murder, for which he was sentenced to death. The petitioner, Daniel Siebert,[1] with the assistance of an attorney, filed the instant petition for writ of *habeas corpus* on September 14, 2001. He is incarcerated on Death Row at Holman Correctional Facility in Atmore, Alabama. The sole issue addressed in this opinion is whether, in light of the complex procedural history of the case and changes in controlling precedent from the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit, petitioner's state Rule 32 petition was "properly filed" for purposes of tolling the one-year limitation for filing federal *habeas* actions found at 28 U.S.C. § 2244(d).

---

[1] In all trial court proceedings, the petitioner's first name was spelled "Danial," but the appellate courts and petitioner's counsel, in the petition for writ of *habeas corpus* filed here, spell the name "Daniel."

## I.  PROCEDURAL HISTORY IN FEDERAL COURT

On September 14, 2001, the petitioner, represented by counsel, filed the instant *habeas corpus* petition.  Petitioner filed an amended petition on October 26, 2001.  On February 5, 2002, the respondents filed an answer and a motion to dismiss supported by a memorandum of law, contending that the petition is time-barred by operation of 28 U.S.C. § 2244(d)(1).[2]  On March 20, 2002, respondents filed a supplemental memorandum of law, and petitioner filed a response to the motion to dismiss on May 6, 2002.  The court entered a memorandum opinion and order on September 30, 2002, granting the respondents' motion to dismiss and dismissing the petition as time-barred.  Petitioner appealed to the Eleventh Circuit Court of Appeals.  The appellate court issued its mandate on December 4, 2003,[3] vacating and remanding, holding that the *habeas* petition was not time-barred because it was "properly filed" within the meaning of that term as explained by the Supreme Court in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000).  See Siebert v. Campbell, 334 F.3d 1018 (11th Cir. 2003).

Following the announcement of the Supreme Court's decision in Pace v. DiGuglielmo, ___ U.S. ___, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005), on April 27, 2005, the respondents filed a renewed motion to dismiss on May 11, 2005, contending that Pace severely undermined the rationale in Siebert, requiring this court to dismiss on time-bar grounds, notwithstanding the mandate from

---

[2]  Respondents also raise issues of procedural default.  Because the petition clearly is time-barred, the court need not address any other issue.

[3]  The opinion, published as Siebert v. Campbell, 334 F.3d 1018, 1032 (11th Cir. 2003), vacated and remanded both the instant case and another *habeas* action Siebert filed in the District Court of the Middle District of Alabama, challenging his death sentence for three other murders.  It will be referred to hereinafter as "Siebert I."

the Court of Appeals. Petitioner filed a response on June 13, 2005, and respondents filed a reply on July 11, 2005. By order dated August 31, 2005, the court noted that the Eleventh Circuit Court of Appeals had mentioned the instant case in its unpublished opinion in Colbert v. Head, 146 Fed. Appx. 340, 344-345 and n. 4 (11th Cir. 2005), and the order directed the parties to file any additional authority or argument related to the application of Pace to the instant motion in light of Colbert. On September 12, 2005, petitioner and respondents filed memoranda in response to the order.

## II.  PROCEDURAL HISTORY IN STATE COURT

On March 19, 1987, the petitioner was convicted after a jury trial for the capital murder of Linda Ann Jarman[4] during the course of a robbery.[5] The jury recommended that petitioner be sentenced to death, and on April 17, 1987, the trial judge sentenced petitioner to death by electrocution. Petitioner appealed his conviction to the Alabama Court of Criminal Appeals, which affirmed on April 14, 1989. Siebert v. State, 562 So. 2d 586 (Ala. Crim. App. 1989). On March 30, 1990, the Alabama Supreme Court affirmed the decision of the appellate court. Siebert v. State, 562 So. 2d 600 (Ala. 1990). A certificate of judgment was issued by the Alabama Court of Criminal Appeals on May 22, 1990. The court did not send a copy to the petitioner, but did send a copy to the Talladega County Circuit Court. On November 5, 1990, the United States Supreme

---

[4]  The victim's name is spelled "Jarmin" in some state court documents.

[5]  In a separate trial held in Lee County, after a motion for change of venue was granted in the Talladega County Circuit Court, Siebert subsequently was convicted of capital murder in connection with the strangulation deaths of Sherri Weathers and her two young sons.

Court denied petitioner's application for writ of *certiorari*. Siebert v. Alabama, 498 U.S. 963, 111 S. Ct. 398, 112 L. Ed. 2d 408 (1990).

On or about August 25, 1992,[6] petitioner filed a petition for post-conviction relief in the trial court pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.[7] The state filed an answer on October 15, 1992, and did not raise the defense that the petition was time-barred. The trial court conducted evidentiary hearings on petitioner's claims of ineffective assistance of counsel on April 3-5, 1995, and on September 26, 1995. On April 4, 1995, the state amended its answer and raised for the first time the defense that the petition was untimely filed. On December 30, 1998, the court ruled that the Rule 32 petition was untimely filed pursuant to Alabama Rule of Criminal Procedure 32.2(c). The court also addressed the petition on the merits and denied all claims. Petitioner appealed to the Alabama Court of Criminal Appeals, which affirmed the denial on December 30, 1999. Siebert v. State, 778 So. 2d 842 (1999). The Alabama Supreme Court denied *certiorari* on September 15, 2000. Siebert v. State, 778 So. 2d 857 (Ala. 2000). Petitioner did not seek review in the United States Supreme Court.

---

[6] The parties refer to the filing date as August 24, 1995. The document attached as defendants' Exhibit 36 shows a date stamp of August 25, 1995. The precise date is not material, however, to the ultimate resolution of this matter.

[7] The Rule 32 petition arising from his conviction for the murder of Jarman was ultimately consolidated in Talledega County Circuit Court with the Rule 32 petition challenging his conviction in Lee County for the murders of Weathers and her two children.

### III.  TIMELINESS

**A.  Law-of-the-Case Doctrine**

The first question the court must address is whether the issue of timeliness of the filing of the instant *habeas* petition may be revisited in light of Pace, or whether the law-of-the-case doctrine requires the court to deem the petition timely filed and address it on the merits.  While it is well settled under the law-of-the-case doctrine that the determination of "an issue decided at one stage of a case is binding at later stages of the same case," Schiavo v. Schiavo, 403 F.3d 1289, 1291 (11th Cir. 2005), there are established exceptions to that general rule.  The doctrine, designed to promote the efficiency of the judicial process and to provide certainty and finality to matters litigated, also must provide for just and correct adjudications of fact and law.  See, *e.g.*, Klay v. All Defendants, 389 F.3d 1191, 1197 (11th Cir. 2004), citing Burger King Corp. v. Pilgram's Pride Corp., 15 F.3d 166, 169 (11th Cir.1994).  Thus, an exception exists when "controlling authority has been rendered that is contrary to the previous decision."  Schiavo, 403 F.3d at 1292.  As discussed below, Pace constitutes controlling authority that is contrary to the previous decision of the Eleventh Circuit Court of Appeals in Siebert.  Accordingly, the law-of-the-case doctrine does not prevent a re-examination of the issue in light of the new authority.

**B.  Application of Pace**

The respondents assert that the proclamation made by the Supreme Court in Pace constitutes a change in law on a controlling issue; accordingly, the court must examine whether the intervening

decision affects the mandate to treat Siebert's petition as timely filed. Petitioner argues that Pace is inapplicable and that his claims must be reviewed on the merits.

There is no dispute among the parties, or in the mandate issued by the Eleventh Circuit Court of Appeals, that the instant petition is untimely under a strict reading of Section 2244(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which establishes a one-year deadline for the filing of *habeas* actions under § 2254 challenging the validity of state criminal convictions. Unless the Rule 32 petition filed in state court counts to toll the running of the one-year limitation, almost eleven years of untolled time elapsed between the date the Supreme Court denied *certiorari* on direct appeal in 1990 and the date petitioner filed the instant *habeas* petition in 2001. What petitioner argues, and what the Eleventh Circuit Court of Appeals held when remanding this matter, is that the limitation period is subject to tolling under § 2244(d)(2), which states:

> (2) The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. [Italics added].

Subsection 2244(d)(2) provides for the tolling of the limitation period during those times the petitioner has pending a "properly filed" post-conviction petition in state court. If, as the appellate court determined in its 2003 mandate, petitioner's Rule 32 petition was "properly filed," the *habeas* petition is timely because the time from the enactment of the AEDPA until September 15, 2000, was tolled by the pendency of the Rule 32 petition, and petitioner filed the instant petition within one year after that date. On the other hand, if the untimeliness of the Rule 32 petition prevents it from being

characterized as "properly filed" under the definition set forth in Pace, there was no tolling of the federal *habeas* limitation, and the petitioner's claims are time-barred.

In the nine years since the enactment of the AEDPA, the issue of whether a post-conviction petition is "properly filed" has been examined in different contexts, as was discussed in this court's earlier memorandum opinion dismissing the petition. As of the date the mandate was issued in this case, the controlling law was set forth in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), in which the Court affirmed the Second Circuit Court of Appeals and determined that a state post-conviction petition that contained claims that were procedurally barred was nonetheless "properly filed." It is important to note that Artuz did not involve the assertion that the state collateral petition was procedurally defaulted because it was not timely filed; the alleged procedural defaults were of a different nature. Nevertheless, in rejecting the argument, the Supreme Court noted that conditions for proper filing include "the form of document, *the time limits upon its delivery*, the court and office in which it must be lodged, and the requisite filing fee." Id. at 8, 121 S. Ct. at 364 [Italics added].

On April 27, 2005, the Supreme Court had the opportunity to expound on Artuz in the specific context of time limits for filing. In Pace v. DiGuglielmo, ___ U.S. ___, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005), the Court held that a post-conviction petition rejected by the state courts as untimely filed under state law is not considered "properly filed" within the meaning of the AEDPA's tolling provision. The court stated simply: "[W]e hold that time limits, *no matter their form*, are 'filing' conditions." Id. at ___, 125 S. Ct. at 1814 [italics added]; see also Anderson v.

Attorney General of Florida, 135 Fed. Appx. 244, 246 (11th Cir.2005), *cert. denied*, 126 S.Ct. 835 (2005).

In Pace, the Court decided whether the untimely filing of a post-conviction petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA") could serve to toll the AEDPA one-year limitation. The governing Pennsylvania statute provided that post-conviction petitions must be filed within one year from the date the conviction becomes final, but further provided three exceptions to the timebar when: (1) governmental interference prevents filing; (2) new constitutional rules are made retroactive; or (3) new facts arise that could not have been discovered through due diligence. Pace, 125 S. Ct. at 1810 n.1. After the petitioner in Pace filed a post-conviction petition that was dismissed as without merit, petitioner appealed. The respondents raised the issue of timeliness, which the petitioner disputed, but the state appellate court held that the post-conviction petition was untimely filed. Id. at 1810-11. Pace then sought relief from his convictions in a federal *habeas* action. A magistrate judge recommended that the petition be dismissed as time-barred, but the district court held that the petitioner was entitled to both statutory and equitable tolling. Id. at 1811. As described by the Supreme Court, the district court "reasoned that because the PCRA set up judicially reviewable exceptions to the time limit, the PCRA time limit was not a 'condition to filing' but a 'condition to obtaining relief' as we described those distinct concepts in Artuz v. Bennett, 531 U.S. 4, 11, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000)." Pace, 125 S. Ct. at 1811. On appeal, the Court of Appeals for the Third Circuit reversed, reasoning that the time limitation provided by the Pennsylvania statute constituted a "condition to filing," and that an untimely petition could not be "properly filed." Pace, 125 S Ct. at 1811.

When Pace reached the Supreme Court, the Court reviewed the question that was raised but not decided in Artuz: "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." Pace, 125 S. Ct. at 1811. The Court determined that, regardless of whether the state's statutory scheme provided exceptions to the post-conviction petition deadline, there exist "no grounds for treating the two differently." Id. The court went on to explain:

> As in Artuz, we are guided by the "common usage" and "commo[n] underst[anding]" of the phrase "properly filed." Id., at 8, 9, 121 S. Ct. 361. In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception.  The purpose of AEDPA's statute of limitations confirms this commonsense reading.  On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

Id. at 1811-12. The Court further explained that, when the state courts hold that a post-conviction petition is untimely under state law, "'that is the end of the matter' for purposes of § 2244(d)(2)." Id. at 1812.

The Court's discussion in Pace of its earlier decision in Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002), is illuminating. The Court wrote:

> Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002), points to the same conclusion.  In Saffold, we considered whether § 2244(d)(2) required tolling during the 4 1/2 months between the California appellate court's denial of Saffold's postconviction petition and his further petition in the California Supreme Court. The California Supreme Court denied the petition "on the merits and for lack of diligence," which raised the question whether that court had dismissed for lack of merit, for untimeliness, or for both. Id., at 225, 122 S. Ct. 2134 (internal quotation

marks omitted). Although we ultimately remanded, we explained that, "[i]f the California Supreme Court had clearly ruled that Saffold's 4 1/2-month delay was 'unreasonable,'" *i.e.*, untimely, "*that would be the end of the matter*, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits." Id., at 226, 122 S.Ct. 2134 (emphasis added); see also id., at 236, 122 S.Ct. 2134 (KENNEDY, J., dissenting) ("If the California court held that all of [Saffold's] state habeas petitions were years overdue, then they were not 'properly filed' at all, and there would be no tolling of the federal limitations period"). What we intimated in Saffold we now hold: When a postconviction petition is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2).

Pace v. DiGuglielmo, ___ U.S. ___, ___, 125 S. Ct. 1807, 1812, 161 L. Ed. 2d 669 (2005). This reference to Saffold makes clear that, regardless of whether the state courts alternatively address the merits of an untimely filed petition, the time limit itself is a "condition to filing," which, if not met, prevents the state petition from being timely filed for purposes of tolling the federal *habeas* limitation at § 2244(d). The definition of "properly filed" under Pace does not include a time-barred state post-conviction petition, even if it ultimately is reviewed on the merits in the state court, so long as the state court has deemed it untimely. Pace, 125 S. Ct. at 1815-16 (J. Stevens, dissenting).

In this case, petitioner filed his Rule 32 post-conviction motion in the state trial court on August 25, 1992. Upon motion of the respondents, the trial court dismissed the petition as untimely filed pursuant to Rule 32.2(c), noting that the certificate of judgment following petitioner's direct appeal was issued by the Alabama Court of Criminal Appeals on May 22, 1990, making any Rule 32 petition filed later than May 21, 1992, untimely.[8] The Alabama Court of Criminal Appeals affirmed,

---

[8] Alabama Rule of Criminal Procedure 32.2(c) in effect at the time governing petitioner's motion prescribed a limitation period requiring any Rule 32 petition to be filed "within two years after the issuance of the certificate of judgment by the Court of Criminal Appeals." Since

and the Alabama Supreme Court denied *certiorari* on September 15, 2000. Thus, the state courts determined conclusively as a matter of state law that the Rule 32 petition was untimely at the time it was filed. Although the trial court examined petitioner's Rule 32 claims on the merits in addition to finding the claims time-barred, the Alabama Court of Criminal Appeals expressly held that the trial court should not have addressed the barred claims on the merits, as such an examination is not permitted by the Alabama rule.[9] The petition contained no allegations of newly discovered evidence that might trigger the six-month exception to the two-year rule. Likewise, in his appeal from the denial of his Rule 32 petition, petitioner did not assert that, because his claims were premised upon newly discovered evidence, he was entitled to an extension of time in accordance with Alabama Rule of Criminal Procedure 32.2(c).

In his response to the current motion to dismiss, Siebert contends that Pace is inapposite because the Pennsylvania statute at issue was not "insufficiently established or inconsistently applied." (Petitioner's Response at p. 5). This argument confuses the issue of timeliness under the statutory tolling provision and whether the state court's adjudication of timeliness is due deference in the context of a procedural default. See, *e.g.*, Dugger v. Adams, 489 U.S. 401, 410 n. 6, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989); Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988). The issue in this case is simply one of statutory interpretation: whether the untimely Rule 32 petition meets the "properly filed" requirement of § 2244(d)(2). It is true that the

---

then, the time limit has been shortened to one year, consistent with § 2244(d).

[9] Rule 32.2(c) specifically states that the court "shall not entertain any petition for relief" that is untimely, as opposed to simply precluding the court from granting the relief, which further makes clear that the statute of limitation is a "condition of filing" as discussed in Artuz and Pace.

Eleventh Circuit's opinion in Siebert stated for the first time that state procedural rules must be "firmly established and regularly followed" to be honored for purposes of interpreting the "properly filed" standard for tolling, but this holding, at least in the context of time limits for filing, is undermined by Pace for the reasons now being addressed.  In fact, in a pre-Pace case, the Court of Appeals appears to have clarified the Siebert holding that, to be "firmly established and regularly followed," the time limit for filing must be jurisdictional.  As Judge Carnes wrote in Hurth v. Mitchem, which examined the Eleventh Circuit Court of Appeals' reasoning in Siebert I:

> The purpose and function of the "properly filed" requirement of § 2244(d)(2) is different from that of the procedural bar doctrine.  Artuz v. Bennett, 531 U.S. 4, 9, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000) ("[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar."); see also Estes v. Chapman, 382 F.3d 1237, 1239 (11th Cir. 2004) (discussing Artuz); Wade v. Battle, 379 F.3d 1254, 1259-60 (11th Cir. 2004) (quoting Artuz).

Hurth, 400 F.3d 857, 862 (11th Cir. 2005).[10]  The Court further noted that "[n]owhere in Siebert did we hold, state, or imply that Rule 32.2(c) was not firmly established and regularly followed (as a non-jurisdictional rule) [for purposes of procedural default] by the Alabama courts before Williams."  Id.  Such findings, the Court explained, relate to federal *habeas* procedural bar purposes, but not to the issue presented by Siebert, which is the different animal of statutory tolling.  Id. at 861-863.

The court believes that Pace effectively overruled Siebert, mandating, instead, that state time limits for filing post-conviction petitions are "conditions to filing," and not merely "conditions to

---

[10]    Hurth was announced on February 16, 2005, before Pace was announced on April 27, 2005.  Thus, the Hurth Court did not have the benefit of the Supreme Court's reasoning in Pace.

obtaining relief," and that, regardless of whether the state court also addresses the merits of an untimely filed state petition, once the state court determines that the state petition was untimely filed, that "ends the matter" as far as considering the petition "properly filed" for tolling under § 2244(d). The essential rationale of Siebert — that, because the Alabama state courts occasionally addressed the merits of time-barred petitions before 2000, the time limitation of Rule 32.2(c) was a "condition to obtaining relief," rather than a "condition to filing," — simply cannot be squared with Pace and its reference to Saffold. The Supreme Court cannot state more clearly than it did in Pace that "time limits, *no matter their form*, are 'filing' conditions." Pace, 125 S.Ct. at 1814. Siebert's focus on whether the time limitation in Rule 32.2(c) was "jurisdictional" is meaningful only in determining whether the time limitation was a "condition to filing" or a "condition to obtaining relief." The Siebert court concluded that, because the time limitation was not "jurisdictional" before 2000, it only limited the state court's ability to grant relief, not its ability to accept an untimely petition for filing. Nothing in Pace or § 2244(d), however, says that only "jurisdictional" rules constitute "conditions to filing." Indeed, many of the "conditions to filing" identified by the Supreme Court in Artuz — the form of the pleading and the payment of a filing fee — are not jurisdictional in the sense that the court lacks the power to deal with the matter. More to the point, the Supreme Court itself, in Pace, identified Alabama's time bar as one of the very types of rules that constitute "conditions to filing." The Court explained:

> The dissent suggests that our conclusion in Artuz, that state procedural bars "prescrib[ing] a rule of decision for a court" confronted with certain claims previously adjudicated or not properly presented are not "filing" conditions, requires the conclusion that the time limit at issue here also is not a "filing" condition. Post, at 1819; see Artuz v. Bennett, 531 U.S., at 10-11, 121 S.Ct. 361 (discussing N.Y.

> Crim. Proc. Law §§ 440.10(2)(a) and (c) (McKinney 1994)).  The dissent ignores the fact that <u>Artuz</u> itself distinguished between time limits and procedural bars.  531 U.S., at 8-10, 121 S.Ct. 361.  For purposes of determining what are "filing" conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of "rule of decision" procedural bars at issue in <u>Artuz</u>, which go to the ability to obtain relief. [FN7].

<u>Id.</u> at ___, 125 S. Ct. at 1814.  At footnote seven, the Court then gives examples of the types of state procedural rules that constitute "conditions to filing," explicitly identifying Alabama's Rule 32.2(c) time limit as one.  Footnote seven in <u>Pace</u> reads:

> FN7. <u>Compare, e.g.</u>, Pa. Rule Crim. Proc. 901(A) (2005) (titled "Initiation of Post-Conviction Collateral Proceedings" and listing compliance with the time limit as one mandatory condition); 42 Pa. Cons. Stat. § 9545(b) (2002) (titled "Jurisdiction and proceedings" and listing the time limit); <u>Commonwealth v. Fahy</u>, 558 Pa. 313, 328, 737 A.2d 214, 222 (1999) (describing the time limit as "jurisdictional"); *2 Ala. Rule Crim. Proc. 32.2(c) (2004-2005) (stating that a court "shall not entertain" a time-barred petition)*, <u>with</u> 42 Pa. Cons. Stat. § 9543(a) (2002) (titled "Eligibility for relief" and listing procedural bars, like those at issue in <u>Artuz</u> ); 2 Ala. Rule Crim. Proc. 32.2(a) (2004-2005) (stating that a "petitioner will not be given relief" if certain procedural bars, like those at issue in <u>Artuz</u>, are present). [Italics added for emphasis].

<u>Id.</u> at ___, 125 S. Ct. at 1814 n. 7.  Plainly, the Supreme Court considered Alabama's Rule 32.2(c) to be the type of rule that is a "condition to filing," violation of which would preclude the petition from being "properly filed" for § 2244(d)(2) purposes.

Because <u>Pace</u> is controlling contrary authority, the mandate issued in <u>Siebert</u> does not preclude the court from again considering the timeliness of the instant *habeas* petition.  Because the Alabama state courts clearly and explicitly found Siebert's 1992 Rule 32 petition to be untimely filed, this court has no option but to conclude that it was not "properly filed" for purposes of tolling

-14-

the § 2244(d) time limitation. Accordingly, Pace compels the conclusion that Siebert's petition must be dismissed as untimely.

### C. Effect of Colbert

Finally, the court also believes that the Eleventh Circuit's unpublished opinion in Colbert v. Head, 146 Fed. Appx. 340 (11th Cir. 2005), does not require a different result. Colbert is the only case involving this question decided by the Eleventh Circuit Court of Appeals after the Supreme Court announced Pace. But, for the reasons explained below, Colbert cannot be read as a binding statement of authority, at least with respect to application of Pace to Alabama's Rule 32.2(c) time limitation.

After Pace, it appeared clear that the untimely state petition filed by Siebert could not be used to toll the § 2244(d) limitation. Even so, in Colbert v. Head, the Court of Appeals quoted its earlier opinion in Siebert for the proposition that the state's "consistent application" of its own procedural rules must be present before the rules are due deference. Colbert, 146 Fed. Appx. at 344. The court wrote in Colbert the following about Siebert:

> In interpreting Artuz, we have concluded that we must give "due deference" to state procedural rules governing whether a § 2244(d)(2) application is "properly filed," with the caveat that the state rule be "firmly established and regularly followed." Wade, 379 F.3d at 1259-60. In Siebert v. Campbell, 334 F.3d 1018, 1025 (11th Cir. 2003), we examined whether § 2244(d)(2)'s tolling provisions were applicable when a state habeas court had found that the petitioner's application for habeas relief was precluded by a state statute of limitations. Id. at 1021. We discussed that:
>
>> The aims of comity and federalism that animate both AEDPA and the doctrine of procedural default favor deference toward state procedural rules only when their consistent application demonstrates the state's real reliance on them as a means to the orderly administration of justice.

>       Id. at 1025.  Thus, after determining that the state rule at issue was not "firmly
>   established and regularly followed" at the time of the petitioner's state habeas filing,
>   we concluded in <u>Siebert</u> that the rule should not be given deference.  <u>Id.</u> at 1025-29.

<u>Id.</u> at 344.  At first blush, this reference to <u>Siebert I</u> might indicate that the Eleventh Circuit Court of Appeals does not interpret <u>Pace</u> as having any application here.  Upon closer examination, however, this court is convinced that the reference to <u>Siebert I</u> does not constitute binding authority regarding the issue of timeliness in the instant matter because <u>Colbert</u> is an unpublished opinion with no precedential force and, even within the context of <u>Colbert</u>, it is *dicta*.

First, <u>Colbert</u> is an unpublished opinion and thus provides no binding precedent.  See Eleventh Circuit Court of Appeals Rule 36-2, which states in part, "Unpublished opinions are not considered binding precedent."  Second, the reference to <u>Siebert</u> in <u>Colbert</u> is *dicta*.  <u>Colbert</u> dealt with the question whether, under Georgia law, the filing of a motion to withdraw a guilty plea after the end of the term of court in which the guilty plea was entered was "properly filed" for purposes of tolling § 2244(d).  The Court of Appeals concluded that, because the state court had no jurisdiction to act on such a motion, the motion was not "properly filed."  This says nothing about the effect of the time limitations for filing Rule 32 petitions under Alabama law.  A determination that Alabama's Rule 32.2(c) limitation was not jurisdictional until 2000 was not necessary to a resolution of the Georgia procedural question.  Thus, even though <u>Siebert</u> is mentioned in passing, it was not necessary to the resolution of the question presented in <u>Colbert</u>.

Accordingly, this court must be guided by the clear holding in <u>Pace</u>.  Because the United States Supreme Court has clearly stated that a state court's determination that a petition for post conviction relief is untimely constitutes the "end of the matter," petitioner's argument that he is

entitled to statutory tolling is unavailing. Pace constitutes an intervening controlling authority regarding the very issue presented here — the meaning of "properly filed" in § 2244(d)(2). Under Pace, the untimely state petition filed by Siebert was not a "properly filed application" capable of tolling the limitation. Petitioner's *habeas* petition therefore is time-barred pursuant to § 2244(d)(1), and the motion to dismiss is due to be granted.

## CONCLUSION

The court has not undertaken the task at hand lightly or with disrespect toward the mandate of the Court of Appeals. The court is well aware of its obligation to follow the law, including the law of the case when it applies. The court is mindful of the high stakes involved for the petitioner, who is facing a sentence of death and whose post-conviction claims have gone unheard so far. Nevertheless, the court is sworn to uphold the law — all of the law — even when doing so may seem unfair and harsh. The only tools the court may work with are those given it by Congress, the Supreme Court, and the Court of Appeals, and the court is obligated to harmonize those tools in arriving at an outcome dictated by the law. Using those tools, the court believes that Pace requires a second look at Siebert.

Accordingly, for the reasons stated above, the court finds that the petition for writ of *habeas corpus* under 28 U.S.C. § 2254 is due to be dismissed with prejudice as time-barred by 28 U.S.C. § 2244(d). Petitioner, with the assistance of counsel, waited until September 2001 to file the instant *habeas* petition, more than five years after the limitation period was enacted in 1996. The Rule 32 petition pending at the time the AEDPA became law did not act to toll the running of the limitation

period under § 2244(d)(2), because it was found to be itself untimely filed under Alabama state law and procedure.  Being untimely itself, the Rule 32 petition was not a "properly filed application" within the meaning of § 2244(d)(2), such that it could toll the running of the federal limitation period.  See Pace, 125 S. Ct. at 1811-12.

By separate order, the court will GRANT the respondents' motion to dismiss the instant petition with prejudice.

DATED the 9th day of February, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE